**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHARON LYNNE MOORE and
FREDERICK MOORE,
Plaintiffs,
v.
CARL THOMAS ANDERSON, individually;
CITY OF LAKELAND, FLORIDA,
a Florida municipal corporation;
GRADY JUDD, in his official capacity as
SHERIFF OF POLK COUNTY, FLORIDA; and
DEPUTY JOHN/JANE DOES 1–5, individually,
Defendants.
_______________________________________/

Case No.: 8:26-cv-2943
**DEMAND FOR JURY TRIAL**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Sharon Lynne Moore ("Mrs. Moore") and Frederick Moore ("Mr. Moore") (collectively, "Plaintiffs"), by and through undersigned counsel, sue Defendants Carl Thomas Anderson, individually ("Detective Anderson"); the City of Lakeland, Florida ("the City"); Grady Judd, in his official capacity as Sheriff of Polk County, Florida ("the Sheriff"); and Deputy John/Jane Does 1–5 ("the Deputies"); (collectively, "Defendants"), and allege as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action for compensatory and punitive damages arising from the wrongful arrest and ten-day false imprisonment of Sharon Lynne Moore, a sixty-seven-year-old great-grandmother, who was seized by Polk County Sheriff's deputies on June 15, 2025 — pursuant to a felony fentanyl-trafficking warrant that was never lawfully directed at her.

2. The warrant traced to a criminal affidavit prepared by Defendant Carl Thomas Anderson, a narcotics detective with the Lakeland Police Department, who conflated Mrs. Moore — an innocent woman with no connection whatsoever to the drug conspiracy under investigation

— with a different person, Sharon *Elaine* Moore, the actual co-conspirator observed selling fentanyl pills alongside co-defendant Debra King. In preparing the arrest warrant affidavit, Detective Anderson recklessly, or at minimum negligently, incorporated Mrs. Moore's true date of birth and driver's license number into the affidavit describing the actual suspect — a different woman who, once correctly identified, proved to be seven months younger, five inches taller, twenty-five pounds heavier, brown-eyed, and the holder of an entirely different driver's license number and residence address.

3. Despite glaring, readily verifiable discrepancies between Mrs. Moore and the actual suspect — discrepancies of the same character that the Eleventh Circuit and courts within Florida's federal districts have repeatedly held defeat a claim of reasonable mistake — the Deputies arrested Mrs. Moore, booked her into the Polk County Jail, and held her for ten days, including through the Juneteenth holiday period, before the State Attorney's Office nolle prossed all six felony counts against her on June 25, 2025.

4. Two days later, on June 27, 2025, Detective Anderson filed a corrected affidavit reflecting the actual suspect's true identifying information, and the actual suspect, Sharon Elaine Moore, was arrested that same day — conclusively confirming that Mrs. Moore was never the person the State intended to charge and that the truth was discoverable the entire time Mrs. Moore sat in jail.

5. Mrs. Moore's ten days of wrongful confinement — more than three times the length of detention Florida's federal courts have found insufficiently "reasonable" as a matter of law even where the underlying warrant was facially valid — were the direct and foreseeable result of the Sheriff's and the City's failure to train and supervise their respective employees in basic identity-

verification procedures before executing warrants and before submitting warrant affidavits for judicial approval, and of the individual Defendants' objectively unreasonable conduct in the face of the evidence before them.

6. Mr. Moore, Mrs. Moore's elderly husband, who suffers from leukemia and depends on Mrs. Moore as his caregiver, was deprived of his wife's care, companionship, and society during her wrongful incarceration and brings a derivative claim for loss of consortium.

## II. JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1983 for violations of the Fourth Amendment to the United States Constitution, as made applicable to the States through the Fourteenth Amendment, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

8. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise out of the same case or controversy as Plaintiffs' federal claims and form part of the same nucleus of operative fact.

9. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Polk County, Florida, and because Defendants Sheriff Judd and the City of Lakeland reside and are subject to this Court's jurisdiction in Polk County, Florida, which lies within the Tampa Division of the Middle District of Florida.

## III. PARTIES

10. Plaintiff Sharon Lynne Moore is, and at all times material was, a citizen and resident of Lakeland, Polk County, Florida, and a citizen of the United States.

11. Plaintiff Frederick Moore is, and at all times material was, a citizen and resident of Lakeland, Polk County, Florida, a citizen of the United States, and the lawful husband of Sharon Lynne Moore.

12. Defendant Carl Thomas Anderson is, and at all times material was, a detective employed by the Lakeland Police Department, Badge No. 338, assigned to the Special Investigations Section as a narcotics detective. He is sued in his individual capacity. At all times material, Detective Anderson acted under color of state law within the meaning of 42 U.S.C. § 1983.

13. Defendant City of Lakeland, Florida is a municipal corporation organized under the laws of the State of Florida and is the public employer of the Lakeland Police Department ("LPD") and its officers, including Detective Anderson. The City is the final policymaker with respect to LPD's policies, practices, customs, and training concerning the preparation and presentation of arrest-warrant affidavits.

14. Defendant Grady Judd is the duly elected Sheriff of Polk County, Florida, and is sued solely in his official capacity as the final policymaker for the Polk County Sheriff's Office ("PCSO") with respect to the training, supervision, and conduct of PCSO deputies, including deputies who execute arrest warrants and process bookings at the Polk County Jail. A suit against the Sheriff in his official capacity is, in substance, a suit against Polk County.

15. Defendants Deputy John/Jane Does 1–5 are PCSO deputies whose identities are not presently known to Plaintiffs but who are believed, upon information and belief, to include the deputies who arrested, transported, and/or booked Mrs. Moore on June 15, 2025. Plaintiffs will amend this Complaint to substitute the true names of these Defendants once ascertained through

the Sheriff's public records and discovery. Each Doe Deputy is sued in his or her individual capacity and was, at all times material, acting under color of state law.

## IV. CONDITIONS PRECEDENT TO SUIT

16. On March 27, 2026, Plaintiffs, through undersigned counsel, served written notice of claim on Sheriff Grady Judd, Chief Sammy L. Taylor, Jr. of the Lakeland Police Department, Lakeland City Manager Shawn Sherrouse, Lakeland Mayor Sara Roberts McCarley, and the Florida Department of Financial Services, as required by Fla. Stat. § 768.28(6), setting forth the factual basis for Plaintiffs' state-law claims and the amount of damages sought.

17. All conditions precedent to the filing of Plaintiffs' state-law claims set forth in this Complaint have been performed, have occurred, or, as of the filing of this Complaint, will have occurred, including the expiration of the six-month period prescribed by Fla. Stat. § 768.28(6)(d) without a final disposition of Plaintiffs' claims, or an earlier written denial of those claims by the responsible agencies.

## V. FACTUAL ALLEGATIONS

### *A. The Underlying Narcotics Investigation and the Defective Warrant Affidavit*

18. In early 2024, LPD initiated a narcotics investigation into the sale of fentanyl pills, cocaine, and methamphetamine by an individual named Debra King, operating out of Prestler's Motel, 2435 New Tampa Highway, Lakeland, Florida, and from a residence at 126 S. Waterloo Avenue, Lakeland, Florida.

19. Detective Anderson was the lead investigator on the case and, according to his own sworn affidavit, personally observed undercover controlled buys of fentanyl pills at the motel on March 20, 2024 and April 17, 2024.

20. Detective Anderson's affidavit identifies a second individual present during both controlled buys — a woman he identifies only as “Sharon Moore” — who allegedly assisted Debra King in counting and supplying fentanyl pills to an undercover detective.

21. Upon information and belief, Detective Anderson's affidavit and the arrest warrant obtained on September 25, 2024, listed personal identifying information for “Sharon Moore” that included a date of birth of November 12, 1957, and Florida driver's license number M600792579120.

22. Those two identifiers — date of birth November 12, 1957, and driver's license number M600792579120 — do not belong to the actual co-conspirator whom Detective Anderson had observed at the motel. They belong to Mrs. Moore, Plaintiff in this action, an entirely different woman who had no connection to Debra King, to Prestler's Motel, or to any narcotics transaction.

23. The actual co-conspirator whom Detective Anderson observed — later identified and prosecuted as Sharon *Elaine* Moore — has a date of birth of April 29, 1958; stands 6'0" tall; weighs approximately 180 pounds; has brown eyes; and holds Florida driver's license number M600785586490, all of which differ materially from Mrs. Moore's own identifying information.

24. On information and belief, this conflation resulted from a records or database error attributable to Detective Anderson and/or the Lakeland Police Department in preparing the warrant affidavit, whereby Mrs. Moore's true personal identifiers were mistakenly associated with the description of an entirely different suspect under investigation.

25. Detective Anderson knew, or in the exercise of reasonable diligence should have known before submitting the affidavit to a magistrate, that the identifying information he included for “Sharon Moore” did not match the physical description of the woman he had personally

observed and photographed during the controlled buys, whose height, weight, and eye color differed materially from Mrs. Moore's.

26. A reasonably well-trained detective in Detective Anderson's position, exercising ordinary professional judgment, would not have submitted a warrant affidavit containing another, unrelated person's date of birth and driver's license number without first confirming that those identifiers in fact matched the individual observed committing the offense.

***B. Polk County Sheriff's Deputies Arrest the Wrong Woman***

27. On June 15, 2025, PCSO Deputies, acting on the warrant issued on the basis of Detective Anderson's affidavit, arrested Mrs. Moore in Lakeland, Polk County, Florida, on six felony counts: two counts of trafficking in fentanyl (4 grams or more), two counts of conspiracy to traffic in fentanyl, and two counts of possession of fentanyl with intent to sell.

28. The Deputies had ready access, at the time of arrest and throughout Mrs. Moore's ensuing ten-day detention, to law enforcement databases, the Florida Driver and Vehicle Information Database, the National Crime Information Center, and the Polk County Jail's own booking and fingerprint systems — any one of which would have revealed the material discrepancies between Mrs. Moore and the actual suspect described in the underlying investigation.

29. Those discrepancies were substantial and readily verifiable, including but not limited to the following:

| **Identifying Characteristic** | **Sharon Lynne Moore (Plaintiff)** | **Sharon Elaine Moore (Actual Suspect, per Corrected Affidavit)** |
|---|---|---|
| Full Name | Sharon Lynne Moore | Sharon Elaine Moore |

| **Identifying Characteristic** | **Sharon Lynne Moore (Plaintiff)** | **Sharon Elaine Moore (Actual Suspect, per Corrected Affidavit)** |
| --- | --- | --- |
| Date of Birth | November 12, 1957 | April 29, 1958 |
| Home Address | 5520 Lily Road, Lakeland, FL 33811 | 180 E. Central Ave., Winter Haven, FL 33880 (booking address of record) |
| Height | 5'7" | 6'0" |
| Weight | 155 lbs. | 180 lbs. |
| Eye Color | Not brown (per Plaintiff) | Brown |
| Driver's License No. | M600792579120 | M600785586490 |
| Social Security No. | XXX-XX-9339 | Not a match |

30. Unlike an officer confronting a fleeting, split-second decision in the field, the Deputies who arrested, transported, and booked Mrs. Moore were not acting under any exigency. Mrs. Moore was in custody, was not fleeing, was not armed, and posed no threat; the Deputies had ample time — including the entirety of the ten days that followed — to compare Mrs. Moore's driver's license, date of birth, physical description, and fingerprints against the information available to them before continuing to detain her.

31. At no point during Mrs. Moore's arrest, transport, or booking did any Deputy compare Mrs. Moore's fingerprints, driver's license number, height, weight, or eye color against the underlying investigative file or against the information Detective Anderson possessed concerning the actual suspect he had personally observed.

32. Mrs. Moore was booked into the Polk County Jail on June 15, 2025, fingerprinted, and processed as booking number 2025-016197.

***C. Ten Days of Wrongful Imprisonment***

33. Mrs. Moore remained in custody at the Polk County Jail from June 15, 2025 until June 25, 2025 — a period of approximately ten days — despite the total absence of any legitimate basis to believe she was the person actually observed participating in the underlying narcotics offenses.

34. During her confinement, Mrs. Moore was subjected to the ordinary and extraordinary indignities and hazards of pretrial incarceration, including but not limited to close confinement with the general jail population on serious felony drug-trafficking allegations she had no part in, separation from her ailing husband, and the acute psychological distress of being wrongfully held on charges carrying the potential for decades of imprisonment.

35. On June 23, 2025, the Polk County Circuit Court conducted a hearing on the State's motion for pretrial detention concerning Mrs. Moore, at which the charges against her, still erroneously attributed to her, remained pending.

36. Mrs. Moore, at all times during her detention, was not the person described in Detective Anderson's affidavit as having participated in the March and April 2024 controlled narcotics purchases, and neither the Sheriff, the Deputies, nor Detective Anderson took any timely action to verify her identity or to correct the error, notwithstanding the ready availability of the information necessary to do so.

### *D. The State Confirms the Mistake and Arrests the Actual Suspect*

37. On June 25, 2025, the Office of the State Attorney for the Tenth Judicial Circuit entered a nolle prosequi as to all six felony counts against Mrs. Moore, terminating the wrongful prosecution and resulting in her release from custody.

38. On June 26, 2025, the Circuit Court entered an Order to Correct Records, directing that all arrest records, reports, citations, computer files, and warrants relating to case number 53-2024-CF-008630-A000-XX be deleted from the records of the Lakeland Police Department, the Polk County Sheriff's Office, the Clerk of Courts, FDLE/FBI, the Florida Department of Highway Safety and Motor Vehicles, and the Office of the State Attorney, expressly because Mrs. Moore was not the person the records should have reflected.

39. On June 27, 2025, Detective Anderson filed a corrected criminal affidavit reflecting the true and accurate identifying information for the actual suspect — Sharon Elaine Moore, date of birth April 29, 1958 — and the actual suspect was arrested that same day on the corrected warrant, confirming that the individual Detective Anderson had intended to charge from the outset was never Mrs. Moore.

40. The ease and speed with which Detective Anderson corrected the affidavit once the error was identified, and the fact that the actual suspect was apprehended the very same day the corrected affidavit was filed, demonstrate that the information necessary to avoid Mrs. Moore's ten-day wrongful detention was available to Defendants the entire time she sat in jail.

41. Mrs. Moore's mugshot, booking photograph, and the fentanyl-trafficking charges falsely attributed to her were published and remain publicly accessible through the Polk County Sheriff's Office's online inmate-lookup system and related public records, permanently associating Mrs. Moore's name and image with serious felony narcotics-trafficking allegations she had no part in.

***E. The Sheriff's and the City's Deliberate Indifference to a Known Risk***

42. On information and belief, the Sheriff has no policy or practice requiring PCSO deputies executing an arrest warrant to cross-reference an arrestee's driver's license, physical description, or fingerprints against the underlying investigative file or affidavit before completing an arrest and booking, particularly where, as here, the deputies have ample time and opportunity to do so free of any exigency.

43. On information and belief, the Sheriff has no policy or practice requiring PCSO booking or classification personnel to halt the booking process, or to promptly escalate for supervisory review, when an arrestee's fingerprints, driver's license information, or physical description fail to match the information contained in the arrest warrant or supporting affidavit.

44. On information and belief, the Sheriff has no policy or practice requiring PCSO personnel to promptly and meaningfully investigate an in-custody arrestee's protest of mistaken identity by comparing the arrestee's fingerprints against those of the actual suspect named in the warrant, resulting in arrestees such as Mrs. Moore being left to languish in custody with no effective mechanism for correcting a known or knowable error.

45. The absence of such policies, and the Sheriff's and the City's failure to train their respective personnel on basic identity-verification procedures before executing warrants, before booking arrestees, and before submitting warrant affidavits for judicial approval, reflects deliberate indifference to the obvious and highly foreseeable risk that individuals who share a common name with an actual suspect, or whose identifying information is erroneously conflated with an actual suspect's, will be wrongfully arrested and detained.

46. That risk is not speculative. It is the entirely predictable consequence of failing to require even minimal identity-verification procedures — procedures that, had they been followed

here, would have prevented Mrs. Moore's arrest altogether or, at the very least, would have ended her wrongful detention within hours rather than ten days.

***F. Damages***

47. As a direct and proximate result of Defendants' conduct described above, Mrs. Moore suffered, and continues to suffer, damages including but not limited to: loss of liberty; physical restraint and confinement; fear, humiliation, and severe emotional distress; damage to her reputation and standing in her community arising from her publicly disseminated mugshot and false felony charges; separation from her husband during his ongoing battle with leukemia; medical and psychological expenses; and other compensatory damages to be proven at trial.

48. As a direct and proximate result of Defendants' conduct described above, Mr. Moore suffered, and continues to suffer, the loss of his wife's consortium, society, companionship, and services during the period of her wrongful incarceration, at a time when he depended on her care and support due to his own serious illness.

49. Plaintiffs have retained the undersigned counsel to prosecute this action and are obligated to pay counsel a reasonable fee, and to the extent recoverable, Plaintiffs seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law.

## VI. CAUSES OF ACTION

### COUNT I

### 42 U.S.C. § 1983 — Fourth Amendment (Detective Carl Thomas Anderson, Individual Capacity)

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 49 as if fully set forth herein.

50. At all times material, Detective Anderson acted under color of state law.

51. A law enforcement officer who prepares and submits a warrant affidavit violates the Fourth Amendment when the officer knowingly, or with reckless disregard for the truth, includes false or unverified identifying information causing an innocent third party to be arrested and detained, where no reasonably well-trained officer would have submitted the affidavit as presented.

52. Detective Anderson prepared and submitted, or caused to be submitted, a warrant affidavit and supporting materials that incorporated Mrs. Moore's true date of birth and driver's license number as identifying information for a different individual — the actual suspect he had personally observed — without confirming that those identifiers matched the person he had actually investigated, notwithstanding material, discoverable differences in physical description between Mrs. Moore and the actual suspect.

53. Detective Anderson knew, or acted with reckless disregard for whether, the identifying information he included in the affidavit did not correspond to the individual he had personally observed and was in a position to describe accurately.

54. Detective Anderson's conduct in preparing a warrant affidavit containing an innocent third party's true personal identifiers, without adequate verification, proximately caused Mrs. Moore's wrongful arrest and ten-day detention.

55. No reasonably well-trained narcotics detective, exercising ordinary professional care, would have submitted a warrant affidavit containing another, unrelated individual's date of birth and driver's license number without confirming that those identifiers matched the suspect actually observed committing the offense.

56. The right to be free from arrest occasioned by an officer's reckless or grossly negligent preparation of a warrant affidavit misidentifying the target of an investigation was clearly established at the time of Detective Anderson's conduct.

57. As a direct and proximate result of Detective Anderson's conduct, Mrs. Moore suffered the damages described above.

WHEREFORE, Plaintiff Sharon Lynne Moore respectfully requests that this Court enter judgment in her favor and against Defendant Carl Thomas Anderson, awarding compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT II

### Negligence (Florida Common Law) (Detective Carl Thomas Anderson, Individual Capacity)

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 49 as if fully set forth herein. This is a state-law claim brought pursuant to Fla. Stat. § 768.28.

58. Detective Anderson, owed Mrs. Moore, as a foreseeable and identifiable non-target of his investigation, a duty to exercise reasonable care in preparing and verifying the accuracy of the personal identifying information included in the warrant affidavit before submitting it for judicial approval.

59. Detective Anderson breached that duty by including Mrs. Moore's true date of birth and driver's license number in an affidavit describing a different individual, without adequately verifying that those identifiers matched the person actually observed committing the offenses described.

60. As a direct and proximate result of Detective Anderson's negligence, Mrs. Moore suffered the damages described above.

WHEREFORE, Plaintiff Sharon Lynne Moore respectfully requests that this Court enter judgment in her favor and against Defendant Carl Thomas Anderson, costs, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT III

**False Arrest and False Imprisonment (Florida Common Law) (Detective Carl Thomas Anderson, Individual Capacity)**

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 49 as if fully set forth herein. This is a state-law claim brought pursuant to Fla. Stat. § 768.28.

61. Defendant Carl Thomas Anderson caused Mrs. Moore to be unlawfully restrained and detained against her will, without lawful authority and without probable cause particular to her, from June 15, 2025 through June 25, 2025.

62. The restraint of Mrs. Moore was unreasonable and unlawful because it was based on a warrant affidavit that, as Defendant Carl Thomas Anderson knew or should have known through the exercise of reasonable diligence, would not lawfully authorize her arrest, given the material, readily discoverable discrepancies between Mrs. Moore and the actual suspect.

63. As a direct and proximate result, Mrs. Moore suffered the damages described above.

WHEREFORE, Plaintiff Sharon Lynne Moore respectfully requests that this Court enter judgment in her favor and against Defendant Carl Thomas Anderson, awarding compensatory

damages within the limits of Fla. Stat. § 768.28(5), costs, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT IV

### 42 U.S.C. § 1983 — Monell Liability (City of Lakeland, Florida)

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 49 as if fully set forth herein.

64. At all times material, the City maintained, and continues to maintain, an absence of policy, or alternatively a de facto custom or practice, of not requiring LPD detectives to verify that the personal identifying information — including date of birth and driver's license number — included in a warrant affidavit in fact corresponds to the individual personally observed committing the offense described, before submitting that affidavit to a magistrate for judicial approval.

65. The need for such a policy and corresponding training is obvious, particularly in investigations, like the one at issue here, involving multiple individuals who share a common first and last name, where the foreseeable consequence of failing to verify identifying information before submission is the arrest and prolonged detention of an innocent person who shares that name.

66. The City's failure to adopt adequate policies and to train LPD detectives accordingly constitutes deliberate indifference to the rights of persons, such as Mrs. Moore, who may be swept up in warrants based on inadequately verified affidavits.

67. The City's policies, customs, and failure to train were the moving force behind, and the direct and proximate cause of, the constitutional violations described above, including Mrs. Moore's wrongful arrest and ten-day detention.

WHEREFORE, Plaintiff Sharon Lynne Moore respectfully requests that this Court enter judgment in her favor and against Defendant City of Lakeland, Florida, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT V

**42 U.S.C. § 1983 — Monell Liability (Sheriff Grady Judd, Official Capacity)**

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 49 as if fully set forth herein.

68. A municipal entity, including a sheriff sued in his official capacity, is liable under 42 U.S.C. § 1983 where an official policy or custom of the entity, or the entity's deliberate indifference in failing to train its officers on an obvious and recurring need, is the moving force behind a constitutional violation.

69. At all times material, the Sheriff maintained, and continues to maintain, an absence of policy, or alternatively a de facto custom or practice, of: (a) not requiring deputies to cross-reference an arrestee's driver's license, physical description, or fingerprints against the underlying warrant or investigative file before completing an arrest, notwithstanding the absence of any exigency; (b) not requiring booking or classification personnel to halt or escalate the booking process where an arrestee's identifying information fails to match the warrant; and (c) not requiring

prompt, meaningful investigation of an in-custody arrestee's protest of mistaken identity through fingerprint comparison or other reasonably available means.

70. The need for such policies and training is obvious: PCSO deputies routinely execute arrest warrants based on identifying information supplied by other agencies, and the foreseeable consequence of failing to require basic identity verification — particularly where deputies face no exigency and have ready access to fingerprint and driver's license databases — is the wrongful arrest and prolonged detention of innocent individuals who share a name, or whose identifying information is erroneously conflated, with an actual suspect.

71. The Sheriff's failure to adopt adequate policies and to train PCSO personnel accordingly constitutes deliberate indifference to the rights of persons, such as Mrs. Moore, with whom PCSO deputies come into contact in the course of executing arrest warrants.

72. The Sheriff's policies, customs, and failure to train were the moving force behind, and the direct and proximate cause of, the ten-day violation of Mrs. Moore's Fourth Amendment rights described above.

WHEREFORE, Plaintiff Sharon Lynne Moore respectfully requests that this Court enter judgment in her favor and against Defendant Grady Judd, in his official capacity as Sheriff of Polk County, Florida, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT VI

**42 U.S.C. § 1983 — Fourth Amendment Unreasonable Seizure (Deputy John/Jane Does 1–5, Individual Capacities)**

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 49 as if fully set forth herein.

73. At all times material, the Deputies acted under color of state law.

74. The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure against unreasonable searches and seizures, including the right to be free from arrest and continued detention without probable cause particular to the person seized.

75. An officer who executes a facially valid warrant against the wrong person is not automatically shielded from liability; where the totality of the circumstances — including material discrepancies between the arrestee and the person described in the warrant, the absence of exigent circumstances, and the amount of time and opportunity available to verify identity — shows that the officer's mistake was not objectively reasonable, the seizure violates the Fourth Amendment.

76. The Deputies' arrest and continued ten-day detention of Mrs. Moore were objectively unreasonable under the totality of the circumstances because: (a) Mrs. Moore's true identifying information — height, weight, eye color, home address, and driver's license number — differed materially from that of the actual suspect described in the underlying investigation; (b) the Deputies were not confronted with any exigency, having arrested Mrs. Moore in a controlled setting with ample time to verify her identity both before and throughout her booking and detention; (c) the Deputies had ready access to fingerprint comparison, driver's license records, and the underlying investigative file, any of which would have revealed the error; and (d) the Deputies made no meaningful effort to verify Mrs. Moore's identity before arresting her or at any point during the ten days that followed.

77. The continued detention of Mrs. Moore after her arrest, in the face of readily available and unexamined exculpatory information, constituted an ongoing unreasonable seizure in violation of the Fourth Amendment for the full duration of her ten-day confinement.

78. The right to be free from arrest and continued detention without individualized probable cause, and the requirement that officers not disregard material, readily verifiable discrepancies between an arrestee and the subject of a warrant, were clearly established under Eleventh Circuit and Florida federal district court precedent at the time of the events described herein.

79. As a direct and proximate result of the Deputies' conduct, Mrs. Moore suffered the damages described above.

WHEREFORE, Plaintiff Sharon Lynne Moore respectfully requests that this Court enter judgment in her favor and against Defendants Deputy John/Jane Does 1–5, awarding compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT VII

### Loss of Consortium (Florida Common Law) (Frederick Moore v. Carl Thomas Anderson, Sheriff Grady Judd and City of Lakeland, Official/Vicarious Capacities)

Plaintiff Frederick Moore realleges and incorporates by reference the allegations of paragraphs 1 through 49 and Counts I, II, III, IV, V, and VI, as if fully set forth herein. This is a state-law claim brought pursuant to Fla. Stat. § 768.28.

80. At all times material, Mr. Moore was the lawful husband of Mrs. Moore.

81. As a direct and proximate result of the tortious conduct described in Counts I, II, III, IV, V, and VI, Mr. Moore was deprived of the consortium, companionship, society, comfort, and services of his wife during her ten-day wrongful incarceration, at a time when Mr. Moore, who suffers from leukemia, depended upon Mrs. Moore's care.

WHEREFORE, Plaintiff Frederick Moore respectfully requests that this Court enter judgment in his favor and against Defendants Carl Thomas Anderson, Grady Judd, in his official capacity as Sheriff of Polk County, Florida, and City of Lakeland, Florida, awarding compensatory damages within the limits of Fla. Stat. § 768.28(5), costs, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sharon Lynne Moore and Frederick Moore respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against Defendants on each of the Counts set forth above;

b. Award Plaintiffs compensatory damages in an amount to be determined at trial;

c. Award Plaintiff Sharon Lynne Moore punitive damages against the individual Defendants sued in their individual capacities, to the extent permitted by law;

d. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

e. Award Plaintiffs pre- and post-judgment interest as allowed by law; and

f. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: September 24, 2026

Respectfully submitted,

**THOELE | DRACH**

BY: ______________________________

**Justin Seth Drach, Esq.**
Florida Bar No. 103016
Email: justin@thoeledrach.com
Secondary email: pleadings@thoeledrach.com
**Amanda Marie Thoele, Esq.**
Florida Bar No. 75118
Email: amanda@thoeledrach.com
Secondary email: pleadings@thoeledrach.com
3744 Dupont Station Court South
Jacksonville, FL 32217
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiffs*