**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHARON LYNNE MOORE and FREDERICK MOORE,

Plaintiffs,

v.

CARL THOMAS ANDERSON, individually;
CITY OF LAKELAND, FLORIDA,
a Florida municipal corporation;
GRADY JUDD, in his official capacity as
SHERIFF OF POLK COUNTY, FLORIDA; and
DEPUTY JOHN/JANE DOES 1-5, individually,

Case No. 8:26-cv-2943-TPB-GDP

Defendants.
_______________________________/

**DEFENDANTS SHERIFF GRADY JUDD AND DEPUTY JOHN/JANE DOES 1–5 MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants, Grady Judd, in his official capacity as Sheriff of Polk County, Florida, and Deputy John/Jane Does 1-5, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, move to dismiss the Complaint (Doc. 1), filed by Plaintiffs, Sharon Lynne Moore and Frederick Moore, and in support thereof state as follows:

## I. INTRODUCTION AND FACTUAL BACKGROUND

This action arises from the June 15, 2025 arrest of Plaintiff Sharon Lynne Moore ("Mrs. Moore") by Polk County Sheriff's Office ("PCSO") deputies pursuant to an arrest warrant identifying "Sharon Moore." The Complaint alleges that the warrant included Mrs. Moore's identifying information, but that Detective Carl

Thomas Anderson ("Det. Anderson") of the Lakeland Police Department ("LPD") had mistakenly associated that information with a different woman suspected of narcotics offenses. (Doc 1, ¶¶ 2-3) Mrs. Moore brings a Fourth Amendment claim against five unidentified deputies individually and a policy-and-training claim against Sheriff Grady Judd in his official capacity. (Doc. 1, ¶¶ 68–79)

The Complaint alleges that LPD began investigating suspected narcotics sales involving Debra King in early 2024. (Doc. 1, ¶ 18) Det. Anderson was the lead investigator and, according to the Complaint, personally observed two controlled fentanyl purchases at Prestler's Motel on March 20 and April 17, 2024. (Doc. 1, ¶ 19) Det. Anderson identified a woman present during the transactions as "Sharon Moore" and alleged that she assisted King. (Doc. 1, ¶ 20)

The Complaint alleges that the affidavit and arrest warrant identified "Sharon Moore" using a date of birth of November 12, 1957, and Florida driver's-license number M600792579120. (Doc. 1, ¶ 21) Mrs. Moore alleges those identifiers belong to her, not to the woman Det. Anderson observed. (Doc. 1, ¶ 22)

Based upon Det. Anderson's affidavit, a state court judge issued an arrest warrant on September 25, 2024, naming "Sharon Moore" and including the identifiers that the Complaint alleges belong to Mrs. Moore. [1] (Arrest Warrant, Ex.

---

[1]. The Complaint refers to Det. Anderson's affidavit and warrant, which are central to Plaintiffs' claims. The Court may consider those documents without converting this Motion into one for summary judgment, provided their authenticity is not challenged. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (permitting consideration of documents central to the plaintiff's claim when their authenticity is unchallenged).

A at 1–2) Mrs. Moore attributes the misidentification to Det. Anderson, alleging he put her identifying information in the warrant affidavit for the different woman he had observed. (Doc. 1, ¶¶ 21–26)

On June 15, 2025, PCSO deputies arrested Mrs. Moore in Lakeland pursuant to the warrant. She was booked on six felony counts: two counts each of fentanyl trafficking, conspiracy to traffic in fentanyl, and possession of fentanyl with intent to sell. (Doc. 1, ¶ 27) Mrs. Moore remained in the Polk County Jail for ten days, until the State recognized the mistaken identity, dismissed all six charges on June 25, 2025, and released her. (Doc. 1, ¶ 37) On June 27, 2025, Det. Anderson filed a corrected affidavit identifying Sharon Elaine Moore as the actual suspect; she was arrested that day. (Doc. 1, ¶¶ 39–40)

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The federal rule does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The factual allegations "must

be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although the court must accept a plaintiff's allegations as true when considering a motion to dismiss, a plaintiff's unsupported conclusions of law or mixed fact and law, "unwarranted factual deductions," and "legal conclusions masquerading as facts" will not prevent a Rule 12(b)(6) dismissal. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. ARGUMENT

### 1. Count VI Fails to State a Fourth Amendment Claim Against the Doe Deputies

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, protects against unreasonable seizures. *U.S. Const*. amend. IV; *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Because an arrest is a seizure, a § 1983 claim alleging false arrest by state officials arises under the Fourth Amendment. *Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016).

#### A. The Initial Arrest Allegations Do Not Establish an Unreasonable Seizure

Probable cause is a complete defense to a §1983 false arrest claim. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). The arrest warrant reflects a judicial determination of probable cause. *See United States v. Leon*, 468 U.S. 897, 921 (1984). When evaluating an arrest pursuant to a warrant, the Court

assesses the reasonableness of the arresting officers' conduct under the totality of the circumstances. *Rodriguez v. Farrell*, 280 F.3d 1341, 1346–49 (11th Cir. 2002). The inquiry here therefore concerns whether the circumstances alleged made the Deputies' reliance on the warrant objectively unreasonable.

The Doe Deputies executed a facially valid warrant issued on Det. Anderson's affidavit. Plaintiff attributes the identification error to Det. Anderson, alleging that he placed her identifying information in the warrant materials for the woman he investigated. (Doc. 1, ¶¶ 21–26) The warrant identified "Sharon Moore" using Mrs. Moore's own date of birth and driver's-license number. (Doc. 1, ¶¶ 21–24.) Comparing those identifiers with Mrs. Moore's identification would therefore have confirmed a match. Discovering Det. Anderson's alleged error required examining whether he had correctly identified his investigative subject; verifying Mrs. Moore's identity against those warrant identifiers would not have exposed it.

The Complaint alleges no participation by an arresting Deputy in preparing Det. Anderson's identification. Although Plaintiff describes physical differences between herself and the actual suspect, she does not explain how those differences were apparent from the warrant or the identifying information used to execute it. (Doc. 1, ¶¶ 23, 29) Nor does she identify contradictory information presented to an arresting Deputy or allege that she protested mistaken identity at the time of arrest. These allegations do not supply an objective circumstance calling the matching warrant identifiers into question.

Plaintiff instead relies on the Deputies' alleged access to additional records,

the absence of exigent circumstances, and their opportunity to investigate. (Doc. 1, ¶¶ 28, 30, 76) Those allegations do not explain why reliance on the warrant's identifying information was unreasonable under the circumstances of the initial arrest. Additional time and access to records do not, standing alone, establish that the Constitution required the Deputies to reexamine Det. Anderson's identification before executing the warrant. The asserted possibility that further investigation could have uncovered his error does not itself establish that the Deputies acted unreasonably.

Accordingly, Det. Anderson's alleged mistake in obtaining the warrant does not, by itself, establish a constitutional violation by the Deputies who executed it. Because the Complaint does not allege circumstances making their reliance on the matching identifiers objectively unreasonable, Count VI fails to state a Fourth Amendment claim based on the initial arrest.

### B. The Continued-Detention Allegations Do Not Establish an Individual Constitutional Violation

Plaintiff alleges that her ten-day confinement became unconstitutional because available exculpatory information remained unexamined. (Doc. 1, ¶ 77) That theory requires consideration of the Deputies' custodial responsibilities and the circumstances requiring further inquiry during confinement.

*Baker v. McCollan* addresses the obligations of custodial officials following an identification error. There, another person's use of the plaintiff's identifying information resulted in a warrant issued in the plaintiff's name. Officials compared

his driver's-license information with the arrest records and concluded that they had the person sought. 443 U.S. 137, 140–41 (1979). In addressing the resulting due-process claim, the Supreme Court explained that officials executing a valid warrant need not independently investigate every claim of innocence and that custodial officials are not constitutionally required to perform an error-free investigation of identity. Id. at 145–46.

*Fowler v. Cross* applied *Baker's* recognition of a reasonable division of responsibilities. County jail officials held a parolee pursuant to a facially valid warrant, while responsibility for providing a preliminary parole revocation hearing rested with the Florida Parole and Probation Commission. The court affirmed summary judgment for the county officials, explaining that their duty was to cooperate with the Commission and that the Commission's failure to perform its duties could not establish the county officials' liability. 635 F.2d 476, 480 (5th Cir. 1981).

*Rivera v. County of Los Angeles* provides persuasive guidance concerning the circumstances requiring additional identity investigation during detention. In rejecting a custodial due-process claim, the court explained that the information supporting a reasonable arrest also bears on whether custodial officials should have recognized a possible identification error. 745 F.3d 384, 391–92 (9th Cir. 2014). The detainee's name and date of birth matched the warrant, and the physical descriptions were similar. The court found no circumstances requiring further investigation. *Id.* at 391–93. It rejected the contention that readily

available, potentially exculpatory information necessarily imposed an investigative obligation under the circumstances presented. *Id.* at 391–92 n.4.

Here, the detention allegations identify no mistaken identity protest communicated to PCSO personnel, no conflicting fingerprint result received by a Doe Deputy, and no notice from LPD or another source calling the identification into question. Plaintiff's assertion of "ready access" to LPD's investigative file does not explain why a particular Deputy's responsibilities or the circumstances of Mrs. Moore's confinement required review of that file. (Doc. 1, ¶ 76(c)) Nor do the references to DAVID, NCIC, and PCSO's booking systems identify a record encountered during booking or confinement that contradicted the warrant. The alleged availability of information must be connected to the responsibility of the Deputy who allegedly should have examined it.

That connection is missing. Plaintiff identifies the Doe Defendants as deputies believed to include those who arrested, transported, and/or booked Mrs. Moore, then attributes the ensuing detention to them collectively. (Doc. 1, ¶¶ 15, 76–77) Participation in those initial functions does not, standing alone, establish responsibility for every subsequent day of confinement. The Complaint does not explain which Deputy had an ongoing custody-review function or how that Deputy's particular duties required further investigation. Section 1983 requires an individualized assessment of each official's conduct, including whether the official had a responsibility to review information that remained unexamined. *Alcocer v. Mills*, 906 F.3d 944, 951–52 (11th Cir. 2018).

The ten-day duration is relevant to the circumstances of confinement, but it does not supply the missing allegations concerning each Deputy's responsibility and unreasonable failure to act. Count VI therefore does not connect the continued detention to a constitutional violation by an individual Deputy.

### C. Doe Deputies Are Entitled to Qualified Immunity

Qualified immunity independently requires dismissal of Count VI. It protects officials performing discretionary functions from individual liability for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable official would have known. *Harlow v. Fitzgerald, 457* U.S. 800, 818 (1982). "To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee,* 284 F.3d at 1194.

The challenged conduct falls within the Deputies' discretionary authority. Plaintiff attributes to them acts and omissions involving warrant execution, transportation, booking, and custody. (Doc. 1, ¶¶ 15, 76–77) Those are legitimate law enforcement functions performed through official powers. The allegation that the Deputies performed those functions unconstitutionally does not remove the conduct from their discretionary authority. See *Holloman ex rel. Holloman v.*

*Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004).

Plaintiff therefore must allege facts establishing both a constitutional violation and that the violated right was clearly established when the challenged conduct occurred. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). The latter inquiry requires fair warning that the conduct was unconstitutional; the general prohibition against unreasonable seizures does not resolve it. *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018). Dismissal is appropriate when the complaint fails to allege a violation of a clearly established constitutional right. *Corbitt*, 929 F.3d at 1311.

The Eleventh Circuit's decisions concerning unexamined information support immunity under the circumstances pleaded. In *Washington v. Rivera*, the court held that an officer's failure to obtain readily available information did not violate clearly established law where she lacked information casting significant doubt on the basis for her actions. 939 F.3d 1239, 1248–49 (11th Cir. 2019). The officer had relied on the clerk's office to report payment of a fine and failed to double check that understanding. *Id.* Similarly, in *Rushing v. Parker*, potentially exculpatory fingerprint evidence was contained in an investigative file, but the court upheld qualified immunity for an officer who did not review it, emphasizing his limited involvement and the absence of a reason to question the preceding investigation. 599 F.3d 1263, 1268–69 (11th Cir. 2010).

For the initial arrest, the identifying information and circumstances discussed in Section A supported a reasonable officer's reliance on the warrant.

Plaintiff's allegations concerning access to LPD's file, time to investigate, and the absence of exigent circumstances do not establish that every reasonable arresting Deputy would have understood an independent review of Det. Anderson's investigation to be constitutionally required. At a minimum, the allegations do not overcome arguable probable cause, which supports qualified immunity in a false-arrest action. See *Edger v. McCabe*, 84 F.4th 1230, 1236–37 (11th Cir. 2023).

The continued detention allegations likewise fail to overcome qualified immunity. The Complaint alleges no mistaken identity protest or conflicting identification result communicated to a Deputy and does not explain why a particular Deputy's duties or the circumstances of confinement made further inquiry clearly required. The ten day duration of confinement, without facts connecting a particular Deputy's conduct to a violation of clearly established law, does not defeat immunity.

Accordingly, the Doe Deputies are entitled to qualified immunity from individual liability for both the initial arrest and the continued detention alleged in Count VI.

### 2. Count V Fails to State a Monell Claim Against Sheriff Judd

A claim against Grady Judd, as Sheriff of Polk County, Florida, ("Sheriff Judd") in his official capacity is a claim against the governmental entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Under *Monell*, an entity may be liable under § 1983 only when an official policy, custom, or practice causes a constitutional injury; it cannot be held liable merely because one of its

employees allegedly violated the plaintiff's rights. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978); *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997). The Eleventh Circuit has recognized that to establish §1983 liability against a governmental entity, "a plaintiff must allege facts showing: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Gurrera v. Palm Beach County Sheriff's Office, 657 Fed. App'x. 886, 893 (11th Cir. 2016) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Normally, random acts or isolated incidents are insufficient to establish a custom or practice. See Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986); see also Brooks v. Scheib, 813 F.2d 1191 (11th Cir. 1987); Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991). In the narrow circumstances where no pattern is required, the risk of a constitutional violation from the failure to train must be patently obvious and highly predictable. *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997).

Plaintiff asserts three PCSO omissions: (1) no policy requirement that deputies compare an arrestee's identifying information with the warrant or investigative file before arrest; (2) no policy requirement that booking staff stop or escalate booking when identifying information does not match the warrant; and (3) no policy requirement that personnel promptly investigate an in custody mistaken identity protest through fingerprint comparison or other available

means. (Doc. 1, ¶¶ 42–44, 69.)

**A. No constitutional violation**

Absent a showing of an underlying constitutional violation, Sheriff Judd's customs, policies and procedures become moot. City of Los Angeles v. Heller, 475 U.S. 796 (1986) (determining that the extent to which departmental regulations infringe on constitutional rights is irrelevant when no constitutional injury, in fact, occurred). Therefore, to the extent the Court were to determine that the Plaintiff has not sufficiently alleged an underlying constitutional violation, Sheriff Judd would likewise be entitled to dismissal.

**B. Count V Fails to Allege Deliberate Indifference or a Causal Connection Between PCSO's Alleged Policy Omissions and Mrs. Moore's Arrest or Continued Detention**

Count V alleges that Sheriff Judd failed to adopt adequate identity verification procedures and train deputies to prevent mistaken arrests and detentions. But the Complaint supports those allegations only with Mrs. Moore's own experience. It identifies no prior similar arrest, detention, complaint, or other warning that would have alerted Sheriff Judd to the alleged deficiencies. A pattern of similar constitutional violations is ordinarily necessary to establish deliberate indifference in a failure to train claim. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). In *Weiland v. Palm Beach County Sheriff's Office*, the Eleventh Circuit affirmed dismissal where the plaintiff's conclusory allegations of notice lacked factual support beyond a single incident involving two deputies. 792 F.3d 1313,

1328–29 (11th Cir. 2015). Here, too, the Complaint supplies no facts establishing a widespread practice or prior notice that PCSO's policies or training were deficient.

The Complaint also fails to show the need for additional training was so obvious that a pattern of prior violations was unnecessary. The narrow single incident exception requires that constitutional violations be a highly predictable consequence of the training omission. *Connick*, 563 U.S. at 63–64. Alleging that PCSO routinely executes warrants based on information supplied by other agencies establishes the frequency of that work. It does not explain why executing those warrants without the additional verification procedures proposed here would predictably cause constitutional violations. Describing the risk of error as "foreseeable" and the need for additional safeguards as "obvious" does not supply that missing factual basis.

The Complaint's account of the identification error undermines its theory that comparing Mrs. Moore's date of birth and driver's license number with the warrant would have prevented her arrest. According to the Complaint, Det. Anderson included Mrs. Moore's own identifiers in the affidavit and resulting warrant, although the underlying investigation concerned a different woman. (Doc. 1, ¶¶ 21–24.) Comparing those identifiers with Mrs. Moore's records would therefore have confirmed a match to the warrant without exposing the underlying investigative error. (Doc. 1, ¶¶ 21–24) Likewise, verifying her driver's license information would have confirmed her identity; without additional investigative information, it would not have revealed that Det. Anderson had mistakenly

associated her identifiers with someone else. The proposed requirement to compare those identifiers would not have exposed the error.

Even accepting that PCSO personnel could have accessed LPD's file and discovered the mistake, that allegation does not establish Sheriff Judd's deliberate indifference. An opportunity to discover errors during this incident does not establish prior notice of deficient procedures or show that unconstitutional arrests or detentions were a highly predictable consequence of the omissions alleged. Nor does the possibility that additional review could have prevented the arrest or shortened the confinement, standing alone, establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 391–92 (1989). This deficiency applies both to the proposed verification procedures before arrest and to the proposed review and escalation procedures during detention.

The alleged failure to require investigation of mistaken identity protests presents an additional, distinct causation problem. Plaintiff alleges that PCSO lacked procedures requiring investigation of mistaken identity protests but does not allege that Mrs. Moore or anyone on her behalf made such a protest to PCSO personnel during her arrest or confinement. (Doc. 1, ¶¶ 44, 69(c)) Without such an allegation, the Complaint does not connect the absence of procedures for responding to protests to her continued detention.

Accordingly, Count V alleges no pattern of similar constitutional violations and no facts supporting the narrow single-incident exception. Comparing Mrs. Moore's identification with the matching warrant identifiers would not have

revealed Det. Anderson's mistake. The broader allegation that reviewing LPD's investigative file could have exposed the error does not cure the absence of facts establishing deliberate indifference. Count V therefore fails to allege that Sheriff Judd's deliberate indifference to a deficient PCSO policy, custom, or training program was the moving force behind Mrs. Moore's allegedly unconstitutional arrest or continued detention.

**3. Count VII Fails to Allege an Actionable Underlying Tort Supporting Consortium Liability Against Sheriff Judd**

Count VII asserts a Florida common-law consortium claim against Sheriff Judd in his official capacity. Plaintiff Frederick Moore ("Mr. Moore") alleges that the conduct incorporated from Counts I through VI deprived him of Mrs. Moore's companionship, care, and services during her confinement. (Doc. 1, ¶ 81) His recovery depends on an underlying tortious injury to Mrs. Moore. *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971).

The relevant inquiry is therefore whether the incorporated allegations establish a legally sufficient basis for Sheriff Judd's direct or vicarious liability under Florida law, subject to section 768.28, Florida Statutes. In *Willingham v. City of Orlando*, the court rejected false arrest and false imprisonment claims against governmental entities arising from enforcement of a facially valid warrant despite mistaken identity. 929 So. 2d 43, 50–51 (Fla. 5th DCA 2006). Here, the Complaint attributes the erroneous identification to Det. Anderson and alleges that PCSO deputies executed a warrant bearing Mrs. Moore's own identifying

information. (Doc. 1, ¶¶ 21–27.) That underlying identification error does not, standing alone, render PCSO's execution of the warrant or resulting custody tortious under Florida law. Because the incorporated allegations do not establish an actionable underlying tort attributable to Sheriff Judd, Mr. Moore's derivative consortium claim in Count VII fails.

## IV. CONCLUSION

Defendants respectfully request dismissal of Counts V and VII against Sheriff Grady Judd in his official capacity and Count VI against Deputy John/Jane Does 1–5 in their individual capacities.

## LOCAL RULE 3.01(g) CERTIFICATE

Counsel for Defendants conferred with counsel for Plaintiff on October 22, 2026, by email regarding the relief requested in this Motion. The parties were unable to reach agreement on the relief requested.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of October 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ *Mario J. Cabrera*
MARIO J. CABRERA
Florida Bar No. 0001163
General Counsel
Polk County Sheriff's Office
1891 Jim Keene Blvd
Winter Haven, Florida 33880
Tel: (863) 298-6600
mcabrera@polksheriff.org
dbing@polksheriff.org

*Counsel for Sheriff Grady Judd and Doe Deputies*